JUDGE SCHEINDLIN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK** 13 CV 3914

| | |
|---|---|
| IRON WORKERS MID-SOUTH PENSION FUND, Derivatively on Behalf of NEWS CORPORATION, | X Case No. |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT** |
| v. | |
| KEITH RUPERT MURDOCH, PAUL V. CARLUCCI, CHASE CAREY, DAVID F. DEVOE, JAMES R. MURDOCH, JOEL I. KLEIN, RODERICK I. EDDINGTON, PETER L. BARNES, VIET DINH, LACHLAN K. MURDOCH, JOSÉ MARÍA AZNAR, NATALIE BANCROFT, STANLEY S. SHUMAN, ARTHUR M. SISKIND, PETER CHERNIN, KENNETH E. COWLEY, ANDREW S. B. KNIGHT, and THOMAS J. PERKINS, |  |
| Defendants, | |
| – and – | |
| NEWS CORPORATION, an Delaware corporation, | |
| Nominal Defendant. | |
| | X DEMAND FOR JURY TRIAL |

## NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder derivative action brought by plaintiff, a shareholder of News Corporation ("News Corp" or the "Company") on behalf of the Company against certain of its officers and directors.  This action seeks to remedy the defendants' violations of law, including breach of fiduciary duties, waste of corporate assets, and unjust enrichment that have caused substantial monetary losses to News Corp and other damages, such as to its reputation and goodwill.

2.      News Corp is the parent entity of News America Incorporated ("News America"), a subsidiary company which has the responsibility of managing the sale of the Company's in-store promotion services and free-standing insert coupons ("FSI")[1] to consumer packaged goods manufacturers ("CPG").

3.      This action arises out of the Individual Defendants' (as defined herein) responsibility for News America engaging in illegal monopolistic practices regarding in-store promotion services and FSIs.  As described in more detail below, News America acquired dominance in this market through various wrongful acts designed to inhibit competition, including: (i) entering into long-term exclusive contracts with retailers; (ii) paying large economically unjustifiable cash payments to retailers to derail competitor contracts; (iii) bundling and predatorily pricing its in-store advertising and promotion products and services with its FSIs; (iv) hacking into competitors' computer files to steal customer lists and marketing materials; (v) dishonestly disparaging competitors' compliance rates and financial viability; and (vi) even defacing competitors' advertisements.

4.      Knowledge of News America's monopolistic practices reached the highest levels of the Company.  News Corp has acknowledged that it has sought to build contract barriers to make it

---

[1] FSIs are the bundles of coupons found in most Sunday newspapers.

difficult for its competitors to compete. Defendant Paul V. Carlucci ("Carlucci"), News America's Chief Executive Officer ("CEO"), created a cut-throat competitive culture, and once rallied his sales force by showing a film clip from The Untouchables in which mobster Al Capone crushes a rival's head with a baseball bat. Moreover, as explained by Robert Emmel ("Emmel"), a former News America account director turned whistle-blower, defendant Carlucci and other supervisors regularly instructed him and other employees to engage in the illegal misconduct discussed herein. Defendant Carlucci called employees uncomfortable with the Company's philosophy "*bed-wetting liberals*," and threatened that they would be "*outplaced from the company*." Defendant K. Rupert Murdoch ("R. Murdoch"), News Corp's CEO and Chairman of the Board of Directors (the "Board"), encouraged defendant Carlucci's aggressive management style and the monopolistic practices he caused News America to carry out.

5. As a result of the Individual Defendants' misconduct, News Corp has incurred and continues to incur substantial damages arising from the numerous legal proceedings and investigations commenced, and to be commenced, against the Company. In addition to being the subject of a probe by the Federal Bureau of Investigation ("FBI") and the U.S. Department of Justice ("DOJ") for its antitrust violations, News America was sued by competitor companies, including Insignia Systems, Inc. ("Insignia"), Valassis Communications, Inc. ("Valassis"), and FLOORgraphics, Inc. ("Floorgraphics"). Despite already paying out nearly *$655 million* to settle these lawsuits, the Individual Defendants still have not completely remedied News America's illegal business practices. As a result, News Corp continues to face growing liability. Two of the Company's CPG clients, including The Dial Corporation ("Dial") and H.J. Heinz Company ("Heinz"), recently filed lawsuits also alleging News America's antitrust violations that continue to this day. In addition, there are reports of other News America clients that are considering their own

lawsuits, including, but not limited to, The Procter & Gamble Company ("Procter & Gamble"), Campbells Soup Company ("Campbells"), Sara Lee Corp. ("Sara Lee"), Pepsi Bottling Group Inc. ("Pepsi"), Kraft Foods Group, Inc. ("Kraft"), Coca-Cola Co. "(Coca-Cola"), Cadbury, Ocean Spray, The Clorox Company ("Clorox"), and Tropicana. Settling these CPG lawsuits, or satisfying adverse judgments, will likely bring the Company's total damages in the range of billions of dollars.

6.      Plaintiff brings this action against the Individual Defendants to repair the harm that they caused and continue to cause the Company.

### JURISDICTION AND VENUE

7.      This Court has jurisdiction under 28 U.S.C. §1332 because plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. This action is not a collusive action designed to confer jurisdiction on the court of the United States that it would not otherwise have.

8.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) because: (i) News Corp maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to News Corp occurred in this District; and (iv) defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

10.     Plaintiff Iron Workers Mid-South Pension Fund was a shareholder of News Corp at the time of the continuing wrongs complained of herein.  The continuing wrongs included the Individual Defendants knowingly or recklessly causing, participating in, or allowing the Company to engage in monopolistic practices.  The Individual Defendants have not remedied these monopolistic practices and the Company continues to suffer damages as a result of the pending litigation brought on by the Individual Defendants' breaches of duty.  The last lawsuit filed against News Corp or its subsidiaries for the wrongdoing alleged herein was filed as recent as December 27, 2012.  Once plaintiff became a shareholder, it has continuously been a shareholder.  Iron Workers Mid-South Pension Fund is a citizen of Texas, Louisiana, Oklahoma, and Mississippi.

**Nominal Defendant**

11.     News Corp is a Delaware corporation with principal executive offices located at 1211 Avenue of the Americas, New York, New York.  Accordingly, News Corp is a citizen of Delaware and New York.  News Corp is a diversified global media company which manages and reports its business in six segments: Cable Network Programming, Filmed Entertainment, Television, Direct Broadcast Satellite Television, Publishing, and Other.  News Corp is the ultimate parent entity of News America, a wholly owned subsidiary within the Company's Publishing segment.  News America is a leading provider of in-store marketing products and services, primarily to CPGs.  News America is also one of the two largest publishers of FSIs in the United States, producing and distributing FSIs to approximately seventy-four million households a year.

**Defendants**

12.     Defendant R. Murdoch is News Corp's CEO and a director and has been since 1979 and Chairman of the Board and has been since 1991.  Defendant R. Murdoch was also a News America director from 1973 to at least November 2012 and CEO and Chairman from at least October 2009 to at least November 2011.  Defendant R. Murdoch is the father of defendants James R. Murdoch ("J. Murdoch") and Lachlan K. Murdoch ("L. Murdoch ").  Defendant R. Murdoch knowingly, recklessly, or with gross negligence: (i) caused or allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations.  News Corp paid defendant R. Murdoch the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Other Annual Compensation | Stock Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value | All Other Compensation | Total |
|---|---|---|---|---|---|---|---|---|
| 2012 | $8,100,000 | $10,425,000 | - | $3,508,681 | - | $7,604,000 | $384,611 | $30,022,292 |
| 2011 | $8,100,000 | $12,500,000 | - | $8,527,321 | - | $3,857,000 | $308,432 | $33,292,753 |
| 2010 | $8,100,000 | - | - | $4,050,000 | $4,368,800 | $5,910,000 | $299,475 | $22,725,275 |
| 2009 | $8,100,000 | - | - | $4,050,000 | $5,435,000 | $4,237,000 | $379,981 | $22,201,981 |
| 2008 | $8,100,000 | - | - | $4,050,000 | $17,500,000 | - | $403,169 | $30,053,169 |
| 2007 | $8,100,000 | - | - | $1,012,500 | $15,795,000 | $6,872,000 | $356,175 | $32,135,675 |
| 2006 | $4,508,694 | $21,175,000 | $218,645 | - | - | - | $6,600 | $25,908,939 |
| 2005 | $4,508,725 | $18,890,000 | $230,921 | - | - | - | $6,300 | $23,635,946 |
| 2004 | $4,509,000 | $12,500,000 | $211,322 | - | - | - | $6,150 | $17,226,472 |

Defendant Murdoch is a citizen of New York.

13.     Defendant Carlucci is News America's Chairman and CEO and has been since 1997.  Defendant Carlucci was also Publisher of The New York Post, a publishing subsidiary of News Corp, from September 2005 to December 2012 and a News America director from at least May 2007 to at least November 2012.  Defendant Carlucci has served in various other capacities at News Corp since joining the Company in June 1991, including as Executive Vice President of News America and as a member of News Corp's Executive Management Committee.  Defendant Carlucci

knowingly, recklessly, or with gross negligence: (i) caused or allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. Defendant Carlucci is a citizen of New York.

14.     Defendant Chase Carey ("Carey") is News Corp's President, Chief Operating Officer ("COO"), Deputy Chairman of the Board, and a director and has been since July 2009. Defendant Carey was also a consultant to News Corp from 2002 to 2003; Co-COO from 1996 to 2002; and a director from 1996 to December 2007. Defendant Carey was News America's Chairman and CEO in at least November 2012; a director from at least May 2011 to at least November 2012; President and COO from 1998 to 2002; Executive Vice President from 1996 to 1998; and a director from 1996 to 2002. Defendant Carey joined News Corp in 1988. Defendant Carey knowingly, recklessly, or with gross negligence: (i) caused or allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. News Corp paid defendant Carey the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Stock Awards | Change in Pension Value | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2012 | $4,050,000 | $8,340,000 | $8,771,717 | $3,514,000 | $81,766 | $24,757,483 |
| 2011 | $4,050,000 | $10,000,000 | $15,243,303 | $798,000 | $69,182 | $30,150,485 |
| 2010 | $8,100,000 | $15,000,000 | - | $2,906,000 | $32,482 | $26,038,482 |

And as a director:

| Fiscal Year | Change in Pension Value | Total |
|---|---|---|
| 2007 | $961,000 | $961,000 |

Defendant Carey is a citizen of Connecticut.

15.     Defendant David F. DeVoe ("DeVoe") is News Corp's Chief Financial Officer ("CFO") and a director and has been since 1990 and a Senior Executive Vice President and has been since 1996.  Defendant DeVoe was also a News America Senior Executive Vice President from 1998 to at least September 2012, CFO from at least May 2007 to at least November 2012, and a director from 1991 to at least November 2012.  Defendant DeVoe knowingly, recklessly, or with gross negligence: (i) caused or allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. News Corp paid defendant DeVoe the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Other Annual Compensation | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value | All Other Compensation | Number of Options Granted | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 2012 | $2,853,750 | $4,170,000 | - | $2,192,926 | - | - | $1,372,000 | $188,016 | - | $10,776,692 |
| 2011 | $2,853,750 | $5,000,000 | - | $9,511,444 | - | - | $668,000 | $211,246 | - | $18,244,440 |
| 2010 | $2,853,750 | - | - | $1,426,875 | - | $2,000,000 | $681,000 | $167,804 | - | $7,129,429 |
| 2009 | $2,853,750 | - | - | $2,693,824 | - | $2,174,000 | $783,000 | $165,128 | - | $8,669,702 |
| 2008 | $2,853,750 | - | - | $2,522,571 | - | $4,250,000 | - | $212,603 | - | $9,838,924 |
| 2007 | $2,853,750 | - | - | $3,230,640 | $922,697 | $4,078,500 | $790,000 | $153,313 | - | $11,729,900 |
| 2006 | $2,603,750 | $6,285,000 | $154,240 | $3,742,635 | - | - | - | $8,800 | - | $12,742,225 |
| 2005 | $2,603,750 | $5,778,000 | - | - | - | - | - | $6,300 | 250,000 | $8,388,050 |
| 2004 | $2,292,000 | $2,350,000 | - | - | - | - | - | $8,150 | 250,000 | $4,848,150 |

Defendant DeVoe is a citizen of New York.

16.     Defendant J. Murdoch is News Corp's Deputy COO.  Defendant J. Murdoch is also Chairman and CEO of News International and has been since March 2011 and a director and has been since December 2007.  Defendant J. Murdoch was also News Corp's Chairman and Chief Executive, Europe and Asia from December 2007 to March 2011 and an Executive Vice President

and a director from 2000 to 2003. Defendant J. Murdoch is the son of defendant R. Murdoch and the brother of defendant L. Murdoch. Defendant J. Murdoch knowingly, recklessly, or with gross negligence: (i) caused or allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. News Corp paid defendant J. Murdoch the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Stock Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value | All Other Compensation | Total |
|---|---|---|---|---|---|---|---|
| 2012 | $3,000,000 | $5,000,000 | $5,263,021 | - | $3,262,000 | $313,051 | $16,838,072 |
| 2011 | $3,000,000 | $6,000,000 | $8,317,811 | - | $379,000 | $224,864 | $17,921,675 |
| 2010 | $3,192,671 | $1,700,000 | $8,317,811 | $2,184,400 | $1,454,000 | $181,598 | $17,030,460 |
| 2009 | $3,147,236 | $1,573,618 | $2,491,709 | $2,717,500 | $167,000 | $219,538 | $10,316,601 |
| 2008 | $1,895,200 | $1,421,400 | $7,804,000 | $3,572,917 | $2,381,000 | $54,175 | $17,128,892 |

Defendant Murdoch is a citizen of New York.

17.     Defendant Joel I. Klein ("Klein") is News Corp's Executive Vice President, Office of the Chairman and a director has been since January 2011. Defendant Klein is also the CEO of Amplify, News Corp's education division and has been since January 2011. Prior to joining News Corp, defendant Klein ran the DOJ's antitrust division and therefore should have been particularly sensitive to the misconduct discussed herein. Defendant Klein knowingly, recklessly, or with gross negligence: (i) caused or allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. News Corp paid defendant Klein the following compensation as a director:

:

| Fiscal Year | Stock Awards | All Other Compensation | Total |
|---|---|---|---|
| 2012 | $1,012,341 | $3,500,000 | $4,512,341 |
| 2011 | - | $3,000,000 | $3,000,000 |

Defendant Klein is a citizen of New York.

18.     Defendant Roderick I. Eddington ("Eddington ") is News Corp's Lead Director and has been since 2006 and a director and has been since 1999. Defendant Eddington is also Chairman of News Corp's Audit Committee and has been since June 2004. Defendant Eddington knowingly or recklessly: (i) allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. News Corp paid defendant Eddington the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2012 | $154,000 | $140,000 | - | $294,000 |
| 2011 | $154,000 | $130,000 | - | $284,000 |
| 2010 | $154,000 | $120,000 | - | $274,000 |
| 2009 | $154,000 | - | - | $154,000 |
| 2008 | $144,000 | - | - | $144,000 |
| 2007 | $135,000 | $123,142 | $1,943 | $260,085 |
| 2006 | $235,000 | $85,000 | - | $320,000 |
| 2005 | $116,000 | $40,000 | - | $156,000 |
| 2004 | $137,000 | - | $6,000 | $143,000 |

Defendant Eddington is a citizen of Australia.

19.     Defendant Peter L. Barnes ("Barnes") is a News Corp director and has been since 2004. Defendant Barnes is also a member of News Corp's Audit Committee and has been since June 2004. Defendant Barnes knowingly or recklessly: (i) allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to

detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations.  News Corp paid defendant Barnes the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Change in Pension Value | Total |
|---|---|---|---|---|
| 2012 | $123,639 | $140,000 | - | $263,639 |
| 2011 | $116,000 | $130,000 | - | $246,000 |
| 2010 | $116,000 | $120,000 | - | $236,000 |
| 2009 | $116,000 | - | - | $116,000 |
| 2008 | $106,000 | $5,315 | - | $111,315 |
| 2007 | $100,000 | $118,145 | - | $218,145 |
| 2006 | $100,000 | $85,000 | - | $185,000 |
| 2005 | $100,000 | $40,000 | - | $140,000 |
| 2004 | $29,000 | - | $2,000 | $31,000 |

Defendant Barns is a citizen of Australia.

20.     Defendant Viet Dinh ("Dinh") is a News Corp director and has been since April 2004. Defendant Dinh is also a member of News Corp's Audit Committee and has been since at least September 2012.  Defendant Dinh knowingly or recklessly: (i) allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. News Corp paid defendant Dinh the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2012 | $141,472 | $140,000 | $281,472 |
| 2011 | $138,000 | $130,000 | $268,000 |
| 2010 | $138,000 | $120,000 | $258,000 |
| 2009 | $138,000 | - | $138,000 |
| 2008 | $126,961 | $5,315 | $132,276 |
| 2007 | $110,000 | $118,145 | $228,145 |
| 2006 | $110,000 | $85,000 | $195,000 |
| 2005 | $96,000 | $40,000 | $136,000 |
| 2004 | $26,000 | - | $26,000 |

Defendant Dinh is a citizen of District of Columbia.

21.     Defendant L. Murdoch is a News Corp director and has been since 1996.  Defendant
L. Murdoch was also an advisor to News Corp from August 2005 to 2007; Deputy COO from 2000
to August 2005; and Senior Executive Vice President from 1999 to 2000.  Defendant L. Murdoch
has served in various other capacities since joining News Corp in 1994, including as Publisher of
The New York Post.  Defendant L. Murdoch is the son of defendant R. Murdoch and the brother of
defendant J. Murdoch.  Defendant L. Murdoch knowingly or recklessly: (i) allowed News Corp and
its subsidiaries to engage in illicit business practices which included monopolistic activities in the
market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate
internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance
with applicable rules and regulations.   News Corp paid defendant L. Murdoch the following
compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Change in Pension Value | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2012 | $100,000 | $140,000 | - | $2,420,000 | - | $2,660,000 |
| 2011 | $100,000 | $130,000 | - | $274,000 | - | $504,000 |
| 2010 | $100,000 | $120,000 | - | $1,571,000 | - | $1,791,000 |
| 2009 | $100,000 | - | - | $231,000 | - | $331,000 |
| 2008 | $90,000 | - | - | - | $48,830 | $138,830 |
| 2007 | $85,000 | $469,873 | $356,625 | $422,000 | $29,638 | $1,363,136 |
| 2006 | $70,833 | $70,833 | - | - | - | $141,666 |

And as an executive:

| Fiscal Year | Salary | Bonus | All Other Compensation | Number of Options Granted | Total |
|---|---|---|---|---|---|
| 2005 | $2,000,000 | $5,778,000 | $6,300 | 187,500 | $7,784,300 |
| 2004 | $1,800,000 | $2,000,000 | $6,150 | 187,500 | $3,806,150 |

Defendant Murdoch is a citizen of Australia.

22.     Defendant José María Aznar ("Aznar") is a News Corp director and has been since
June 2006.  Defendant Aznar knowingly or recklessly: (i) allowed News Corp and its subsidiaries to
engage in illicit business practices which included monopolistic activities in the market for in-store

promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations.  News Corp paid defendant Aznar the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2012 | $107,639 | $140,000 | $247,639 |
| 2011 | $100,000 | $130,000 | $230,000 |
| 2010 | $100,000 | $120,000 | $220,000 |
| 2009 | $100,000 | $46,161 | $146,161 |
| 2008 | $90,000 | $50,147 | $140,147 |
| 2007 | $85,000 | $102,402 | $187,402 |

Defendant Aznar is a citizen of Spain.

23.     Defendant Natalie Bancroft ("Bancroft") is a News Corp director and has been since December 2007.  Defendant Bancroft knowingly or recklessly: (i) allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations.  News Corp paid defendant Bancroft the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2012 | $107,639 | $140,000 | $247,639 |
| 2011 | $100,000 | $130,000 | $230,000 |
| 2010 | $100,000 | $120,000 | $220,000 |
| 2009 | $100,000 | $90,262 | $190,262 |
| 2008 | $49,500 | $44,971 | $94,471 |

Defendant Bancroft is a citizen of United Kingdom.

24.     Defendant Stanley S. Shuman ("Shuman") is a News Corp Director Emeritus and has been since October 2005.  Defendant Shuman was also a News Corp director from 1982 to October 2005 and a News America director from 1985 to at least November 2012.  Defendant Shuman

knowingly or recklessly: (i) allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. News Corp paid defendant Shuman the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2012 | $100,000 | $140,000 | - | $240,000 |
| 2011 | $100,000 | $130,000 | - | $230,000 |
| 2010 | $100,000 | $120,000 | - | $220,000 |
| 2009 | $100,000 | $120,000 | - | $220,000 |
| 2008 | $90,000 | $105,000 | - | $195,000 |
| 2007 | $85,000 | $100,000 | - | $185,000 |
| 2006 | $85,000 | $85,000 | - | $170,000 |
| 2005 | $85,000 | $40,000 | - | $125,000 |
| 2004 | $150,000 | - | $6,000 | $156,000 |

Defendant Shuman is a citizen of New York.

25.     Defendant Arthur M. Siskind ("Siskind") is a News Corp Director Emeritus and has been since October 2012 and News Corp's Senior Advisor to the Chairman of the Company and has been since January 2005. Defendant Siskind was a News Corp director from 1991 to October 2012; News Corp's Group General Counsel from 1991 to January 2005; Senior Executive Vice President from 1996 to January 2005; and Executive Vice President from 1991 to 1996. Defendant Siskind was also a News America Senior Executive Vice President from 1998 to at least November 2004; Executive Vice President from 1991 to 1998; and a director from 1991 to 2005. Defendant Siskind knowingly or recklessly: (i) allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. News Corp paid defendant Siskind the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Change in Pension Value | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2012 | $100,000 | $140,000 | - | - | - | $240,000 |
| 2011 | - | $1,200,000 | - | $773,000 | $1,349,454 | $3,322,454 |
| 2010 | $1,200,000 | $1,200,000 | - | $1,170,000 | $146,385 | $3,716,385 |
| 2009 | $1,093,846 | $476,443 | - | $620,000 | $150,015 | $2,340,304 |
| 2008 | $1,000,000 | $1,485,072 | - | - | $143,977 | $2,629,049 |
| 2007 | $1,000,000 | $1,800,588 | $622,698 | $417,000 | $140,397 | $3,780,683 |

And as an executive:

| Fiscal Year | Salary | Bonus | All Other Compensation | Number of Options Granted | Total |
|---|---|---|---|---|---|
| 2005 | $1,715,427 | $5,000,000 | $6,300 | 250,000 | $6,721,727 |
| 2004 | $2,142,000 | $1,300,000 | $6,150 | 250,000 | $3,448,150 |

Defendant Siskind is a citizen of New York.

26.     Defendant Peter Chernin ("Chernin") was News Corp's President, COO, and a director from 1996 to June 2009. Defendant Chernin was also News America's Chairman, CEO, and a director from 1996 to at least February 2008. Defendant Chernin knowingly, recklessly, or with gross negligence: (i) caused or allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. Defendant Chernin is a citizen of California.

27.     Defendant Kenneth E. Cowley ("Cowley") was a News Corp director from 1979 to October 2011. Defendant Cowley was also a News America Executive Vice President and a director from 1992 to 1997. Defendant Bancroft knowingly or recklessly: (i) allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance

with applicable rules and regulations.   News Corp paid defendant Bancroft the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2012 | $107,639 | $140,000 | $247,639 |
| 2011 | $100,000 | $130,000 | $230,000 |
| 2010 | $100,000 | $120,000 | $220,000 |
| 2009 | $100,000 | $90,262 | $190,262 |
| 2008 | $49,500 | $44,971 | $94,471 |

Defendant Cowley is a citizen of Australia.

28.     Defendant Andrew S. B. Knight ("Knight") was a News Corp director from 1991 to October 2012.  Defendant Knight was also Chairman of News International from 1990 to 1995.  Defendant Knight was a member of News Corp's Audit Committee from at least October 2003 to October 2012.   Defendant Knight knowingly or recklessly: (i) allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations.   News Corp paid defendant Knight the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2012 | $143,000 | $140,000 | - | $19,002 | $302,002 |
| 2011 | $162,072 | $130,000 | - | - | $292,072 |
| 2010 | $161,960 | $120,000 | - | - | $281,960 |
| 2009 | $162,141 | - | - | - | $162,141 |
| 2008 | $157,038 | - | - | - | $157,038 |
| 2007 | $148,175 | $123,142 | $1,943 | - | $273,260 |
| 2006 | $247,181 | $85,000 | - | - | $332,181 |
| 2005 | $111,000 | $40,000 | - | - | $151,000 |
| 2004 | $170,000 | - | $6,000 | - | $176,000 |

Defendant Knight is a citizen of United Kingdom.

29.     Defendant Thomas J. Perkins ("Perkins") was a News Corp director from 1996 to October 2011. Defendant Perkins was also a member of News Corp's Audit Committee from at least October 2003 to October 2011. Defendant Perkins knowingly or recklessly: (i) allowed News Corp and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs; and (ii) failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations. News Corp paid defendant Perkins the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2012 | $42,550 | $43,167 | - | $85,717 |
| 2011 | $138,000 | $130,000 | - | $268,000 |
| 2010 | $138,000 | $120,000 | - | $258,000 |
| 2009 | $138,000 | - | - | $138,000 |
| 2008 | $126,861 | - | - | $126,861 |
| 2007 | $110,000 | $123,142 | $1,943 | $235,085 |
| 2006 | $210,000 | $85,000 | - | $295,000 |
| 2005 | $100,000 | $40,000 | - | $140,000 |
| 2004 | $146,000 | - | $6,000 | $152,000 |

Defendant Perkins is a citizen of California.

30.     The defendants identified in ¶¶12-17, 21, 25-26 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶12, 14-15, 17-29 are referred to herein as the "Director Defendants." The defendants identified in ¶¶18-20, 28-29 are referred to herein as the "Audit Committee Defendants." Collectively, the defendants identified in ¶¶12-29 are referred to herein as the "Individual Defendants."

### DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

31.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe News Corp and its shareholders fiduciary obligations of trust,

loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage News Corp in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of News Corp and not in furtherance of their personal interest or benefit.

32.     To discharge their duties, the officers and directors of News Corp were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of News Corp were required to, among other things:

(a)     avoid any and all illicit business practices, including monopolistic activities in the market for in-store promotion services and FSIs;

(b)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(c)     remain informed as to how News Corp conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with applicable laws.

**Breaches of Duties**

33.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of News Corp, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

34.     The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to engage in monopolistic practices in the market for in-store promotion services and FSIs, improper practices that wasted the Company's assets, and caused News Corp to incur substantial damage.

35.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of News Corp, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, News Corp has expended, and will continue to expend, significant sums of money.

**Standards of Business Conduct**

36.     Since at least December 2003, the Company had in place its Standards of Business Conduct ("SBC") which "set forth the general principles that underlie the culture of trust that is at the heart of [News Corp] and its majority-owned business units."  The SBC is applicable to the Company's "directors, officers and employees" who "must act according to the principles set forth in [the SBC]."  According to the SBC, News Corp's officers and directors were responsible for protecting the Company's "most valuable asset" -- its reputation.  In so doing, the SBC required that News Corp's officers and directors refrain from doing "anything that would harm that reputation, or that would otherwise bring the Company into disrepute."  Under the SBC, News Corp's officers and directors were required to "engage in fair competition in the free market, [and] obey[] all applicable antitrust and competition laws in the countries in which [the Company did] business."

**Additional Duties of the Audit Committee Defendants**

37.     In addition to these duties, under its Charter in effect since at least 2004, the Audit Committee Defendants, defendants Barnes, Dinh, Eddington, Knight, and Perkins, owed specific duties to News Corp to assist the Board in overseeing the Company's compliance with legal and regulatory requirements.  Moreover, the Audit Committee's Charter provides that defendants Barnes, Dinh, Eddington, Knight, and Perkins were required to ensure that the Company had an adequate system of internal controls.  The Audit Committee met eight times in 2005; six times in 2006, 2007, and 2008; seven times in 2009; six times in 2010; eight times in 2011; and six times in 2012.  On information and belief, during Audit Committee meetings, as required by the Audit Committee Charter, defendants Barnes, Dinh, Eddington, Knight, and Perkins discussed News America's monopolistic practices and the potential antitrust laws the Company was violating as a result thereof.

## BACKGROUND

38.     News America, one of News Corp's subsidiaries, provides two different types of products and services to its CPG clients, in-store advertising and FSIs.  The in-store advertising market consists of certain products placed within grocery stores and drug stores to promote products sold by CPGs during shopping, or at the "moment of decision."  These in-store promotions include coupon dispensers, shelf advertising, floor advertising, and shopping-cart advertising.  The FSI market consists of coupon booklets that are inserted in newspapers.  CPGs rely on in-store advertising and FSIs to promote their products.

## THE INDIVIDUAL DEFENDANTS CAUSE NEWS AMERICA TO ENGAGE IN ILLEGAL MONOPOLISTIC PRACTICES

39.     As described in more detail below, the Individual Defendants caused or allowed News America to unlawfully maintain a monopoly over the market for advertising and promotion services geared toward CPGs.  News Corp acquired dominance in this market through various

wrongful acts designed to impede competition, including: (i) entering into long-term exclusive contracts with retailers; (ii) paying large economically unjustifiable cash payments to retailers to derail competitor contracts; (iii) bundling and predatorily pricing its in-store advertising and promotion products and services with its FSIs; (iv) hacking into competitors' computer files; (v) dishonestly disparaging competitors' compliance rates and financial viability; and (vi) defacing competitors' advertisements.

**Exclusive Contracts with Retailers**

40.     News America has effectively denied its competitors access to retail stores and CPGs by entering into long-term exclusive contracts with a majority of the retail grocery chains in the United States. These contracts often start with three to four year terms and then are routinely extended by News America to make them exclusive for even longer periods. Some contracts last a decade or more. News America's exclusive contracts provide that the stores will not permit installation of in-store advertising and promotion products by any party other than News America. Consequently, a CPG that seeks broad coverage for an in-store promotion campaign has no alternative but to acquire its in-store advertising and promotion products from News America.

41.     News America's exclusive contracts with major national and regional supermarket chains restrict competition in over 16,200 chain and high-volume supermarket stores. These contracts represent News America's stranglehold over *82%* of the supermarket segment of the relevant market. News America also has exclusive contracts with major national and regional drug stores. News America's exclusive contracts restrict competition and give it power over 17,100 national and regional drug stores, representing over *90%* of the drug store segment of the relevant market.

**Cash Payments to Retailers**

42.     News America generated additional business from retail chains and gained exclusive contracts by offering stores cash payments to derail competitor contracts.  According to Emmel, a former employee of the Company, News America paid drug store chain Eckerd $4.5 million to secure exclusive rights to place advertising in its stores.  The deal prevented rival agency Insignia from placing ads in Eckerd. According to Emmel, there was no justification for these cash payments based on anticipated revenues from these placements. This is because News America was unable to place much business inside Eckerd.  As further explained by Emmel, News America provided these cash payments as part of a large corporate "blocking move," to damage competitors and prevent them from gaining "critical mass" in the advertising market.

43.     Payment to secure an advertisement monopoly with a store was a repeat tactic at News America.  Emmel stated that News America also paid Ahold $11,000-$12,000 per store to secure exclusive placement rights and block advertisements from Insignia and Floorgraphics. Moreover, News America provided Harris Teeter $150,000 over a three-year term to ensure that Harris Teeter would not contract with a competitor.

**Bundling of FSI Coupons**

44.     News America used its market power in the in-store advertising and promotions market to attain a monopoly in the FSI market.  In particular, News America required CPGs to purchase FSIs as a condition to purchasing in-store promotions, or as a condition to avoiding substantial penalties on the pricing of in-store promotion products.

45.     The penalties imposed upon customers who do not purchase FSIs from News America create an unlawful tying arrangement between FSIs and in-store promotions by coercing these customers to purchase FSIs from News America on terms which are undesirable or which these

customers would have preferred to obtain elsewhere on different terms. Debra Lucidi, former Sara Lee director of business development, describes an experience she had with News America's coercive monopolistic practices. Ms. Lucidi once asked News America to give her a proposal on in-store marketing but News America submitted a joint coupon/in-store bid instead, and refused to alter it. If Sara Lee declined the offer, the implication was that News America would either not let the company advertise in-store or charge exorbitant rates. According to Ms. Lucidi, "News America pretty much had the market captured on that. I believe they still do. We didn't really have options."

**Hacking into Competitors' Computerized Customer Lists and Marketing Materials**

46.     In addition to the aggressive business practices discussed above, News America hacked into its competitors' password-protected accounts in order to steal its competitors' contracts. According to Floorgraphics, one of News America's only competitors, News America hacked into its password-protected accounts at least eleven times in 2003 and 2004 to obtain Floorgraphics' customer lists. Floorgraphics learned of News America's responsibility for these security breaches by tracing the hacking to IP addresses registered to the Company. Shortly after these hackings occurred, certain of Floorgraphics' customers got out of their contracts with Floorgraphics and entered into new contracts with News Corp. News America has admitted that someone in its office had illicitly accessed Floorgraphics' password-protected website but failed to pinpoint the person responsible.

**Disparaging Competitors' Compliance Rates and Financial Viability**

47.     News America further gained market share by publishing false statements to clients about its competitors. In particular, News America disparaged its competitors' compliance rates, or the percentage of the stores promised an advertising campaign in which the campaign is successfully placed. As part of its sales and marketing efforts, News America circulated letters to retail stores

claiming that News America delivered compliance rates of 90-95%, while its competitors Floorgraphics and Insignia had rates of less than 50% and 20%, respectively. According to Emmel, none of these purported compliance rates were correct. News America asserted low competitor compliance rates to frustrate competitors' access to CPGs' business.

48.    In addition to sullying its competitors' reputations by misrepresenting their compliance rates, News America also lied to retailers by stating that the Company's competitors were having difficulty meeting contractual payments to retailers for promotional access. According to Emmel, both Floorgraphics and Insignia's financial viability were attacked on a regular basis.

**Defacing Competitor Advertisements**

49.    News America employees went so far as to physically deface competitor advertisements in order destroy competition. Emmel recalls in 2003 that his supervisors instructed him whenever possible to take photos of ripped or torn Floorgraphics advertisements and bring them to the retailers' attention. Emmel said that his supervisors encouraged him to destroy Floorgraphics advertisement. Emmel was aware of other News America employees vandalizing competitor advertisements before taking photos for the retailers.

**Knowledge of News America's Illicit Practices Reached the Highest Levels of the Company**

50.    Both defendant Carlucci, News America's CEO, and defendant R. Murdoch, News Corp's CEO, encouraged and pursued gaining market share by destroying News America's competitors. Under the direction of defendant R. Murdoch , defendant Carlucci created a cut-throat competitive culture at News America and regularly instructed his sales team to engage in the illegal business practices discussed herein. Defendant Carlucci was known to screen mafia movies for his employees, and once rallied his sales team by showing a film clip from The Untouchables in which Al Capone crushes a rival's head with a baseball bat. Moreover, defendant Carlucci silenced any

opposition to his management style by threatening that employees uncomfortable with the Company's philosophy — *"bed-wetting liberals"* as he called them — would be *"outplaced from the company."*

51.     Defendant R. Murdoch knew of News America's antitrust violations and encouraged defendant Carlucci's aggressive management style and the business practices defendant Carlucci caused News America to employ.  Evidence in the litigation between News America and its competitors revealed that defendant Carlucci discussed his plans and its success with defendant R. Murdoch.  Valassis' declining market share and stock price, however, was not enough for defendant R. Murdoch.  In a recorded speech to his sales team, defendant Carlucci explained that after discussing Valassis' problems due to his strategy, defendant R. Murdoch told defendant Carlucci that now he had to "really go after" Valassis.  In particular, defendant Carlucci stated:

> Yesterday [Valassis] announced their earnings would be off by 19 percent for the next year. *Their stock dropped by $9, that's 26 percent due to the market share loss.*
>
> I trust they will be coming out of this at full force, but for days *it's like winning the playoffs before you get to the world series. You feel pretty good. And now we want to win the series.*
>
> *Last night Mr. Murdoch was saying now you have to really go after them.*

52.     Defendant Carlucci made no secret that defendant R. Murdoch was personally instructing him to go after News America's competitors.  In fact, according to the founders of Floorgraphics, George and Richard Rebh, defendant Carlucci once told them, "I will destroy you.  I work for a man who wants it all, and doesn't understand anybody telling him he can't have it all."  The "man" defendant Carlucci was referring to, of course, was defendant R. Murdoch.

**RESULTING INVESTIGATIONS AND LITIGATION AGAINST NEWS AMERICA**

53.     As a result of the above illegal anti-competitive activities, News America, News Corp's subsidiary, has been the subject of numerous government investigations and lawsuits on

behalf of competitors and CPGs.  The lawsuits, which have already cost the Company hundreds of millions of dollars in damages, include the following actions:

**Floorgraphics Litigation**

54.      Floorgraphics filed a lawsuit against News America in July 2004 claiming that News America had sabotaged Floorgraphics' business by lying to its customers and hacking into its computers.  In March 2009, News Corp settled the Floorgraphics lawsuit for *$29.5 million*.  Shortly after the settlement was disclosed, News America agreed to acquire Floorgraphics.  A deal price was not disclosed.  Some people have suggested that the acquisition was part of the settlement.

**Insignia Litigation**

55.      Insignia filed a lawsuit against News America in September 2004 claiming that News America violated antitrust laws.  Insignia alleged that News America engaged in a campaign to exclude Insignia and other competitors from the in-store advertising market by bundling its various advertising programs to prevent Insignia from effectively competing, threatening retailers to stop doing business with News America's competitors, and offering uneconomically large payments to retailers to exclude News America's competitors.  News America settled Insignia's lawsuit in February 2011 for *$125 million*.

**Valassis Litigation**

56.      Valassis filed a lawsuit against News America in January 2006.  In January 2010, News Corp settled the Valassis lawsuit.  Under the terms of the settlement, News Corp was required to pay Valassis *$500 million*.  In addition, News Corp was issued a permanent injunction prohibiting the Company from tying and bundling FSIs and in-store promotions.

**Dial and Heinz Litigation**

57.     Despite the numerous nine-figure settlements providing red flags for the Individual Defendants regarding the damages caused by News America's antitrust violations, the Individual Defendants did not cease News America's monopolistic practices.  As a result of News America's continued illicit business practices, News America is now involved in litigation on behalf of certain CPGs harmed by the Company's anti-competitive behavior, namely Dial and Heinz.  According to these CPGs, News America suppressed competitive promotion of a massive number of consumer goods in 40,000 retail stores, and scores of newspapers nationwide, to acquire and maintain unlawful monopolies in the in-store promotion and FSI markets at the expense of its purchasers.  As a result of these monopolies, the Company's CPG clients had no choice but to purchase their in-store advertising and FSIs from News America.  Both Dial and Heinz allege that News America has used this market power to charge CPGs unfair and inflated monopoly prices for these services and coupons.  The Dial and Heinz lawsuits were filed in December 2012 and are currently pending.

**FBI and DOJ Investigations**

58.     In addition to the above lawsuits, the Company was also the subject of several investigations by the FBI and the DOJ.  The FBI probe focused on News America's computer hacking and the DOJ's investigation focused on News America's numerous antitrust violations.  The Company has not yet disclosed any developments in either of these investigations.

## DAMAGES TO NEWS CORP

59.     As demonstrated by the chart below, the Individual Defendants' improprieties caused News Corp's subsidiary News America to violate antitrust laws and incur substantial damages due to litigation on behalf of News America's competitors and clients:

| Antitrust Actions Against News America | | | | |
|---|---|---|---|---|
| **Plaintiff** | **Plaintiff Type** | **Action Date** | **Settlement Date** | **Settlement Amount** |
| Floorgraphics | Competitor | 7/19/2004 | 3/10/2009 | $29,500,000 |
| Insignia | Competitor | 9/23/2004 | 2/9/2011 | $125,000,000 |
| Valassis | Competitor | 1/18/2006 | 1/30/2010 | $500,000,000 |
| Dial | Client | 12/21/2012 | - | - |
| Heinz | Client | 12/27/2012 | - | - |
| | | | **Current Total** | **$654,500,000** |

60.     As a direct and proximate result of the Individual Defendants' actions, News Corp has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred in investigating and defending News Corp and certain officers and directors in the lawsuits brought on behalf of News America's competitors Floorgraphics, Insignia, and Valassis, and the hundreds of millions of dollars spent on settling these lawsuits;

(b)     costs incurred from purportedly acquiring Floorgraphics as part of the Company's settlement;

(c)     costs incurred in investigating and defending News Corp and certain officers and directors in the  lawsuits brought on behalf of News America's clients, Dial and Heinz, and potentially hundreds of millions of dollars in settlements or to satisfy adverse judgments;

(d)     costs incurred from responding to U.S. federal agencies' investigations, including those initiated by the FBI and the DOJ; and

(e)     costs incurred from compensation and benefits paid to the defendants who have breached their duties to News Corp.

61.     Moreover, these actions have irreparably damaged News Corp's corporate image and goodwill.  In particular, News Corp's reputation and/or relationship with its CPG clients has been harmed, which may adversely affect the Company's future business.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

62.     Plaintiff brings this action derivatively in the right and for the benefit of News Corp to redress injuries suffered, and to be suffered, by News Corp as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment by the Individual Defendants. News Corp is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

63.     Plaintiff will adequately and fairly represent the interests of News Corp in enforcing and prosecuting its rights.

64.     Plaintiff was a shareholder of News Corp at the time of the continuing wrongdoing complained of, has continuously been a shareholder since that time, and is a current News Corp shareholder.

65.     The current Board of News Corp consists of the following sixteen individuals: defendants R. Murdoch, Carey, DeVoe, J. Murdoch, Klein, Eddington, Shuman, Siskind, L. Murdoch, Barnes, Dinh, Aznar, and Bancroft, and non-defendants Elaine L. Chao ("Chao"), James W. Breyer, and Álvaro Uribe. Plaintiff has not made any demand on the Board because such a demand would be a futile and useless act, particularly for the reasons stated below.

**Demand Is Excused Because the Director Defendants' Conduct Is Not a Valid Exercise of Business Judgment**

66.     The Director Defendants' challenged misconduct at the heart of this case is not a valid exercise of business judgment. Defendants R. Murdoch, Carey, DeVoe, J. Murdoch, Klein, Eddington, Shuman, Siskind, L. Murdoch, Barnes, Dinh, Aznar, and Bancroft knew or recklessly disregarded that News America engaged in improper monopolistic practices that violated federal laws and regulations. Illegal business practices are not a legally protected business decision and such conduct can in no way be considered a valid exercise of business judgment. Also, at a

minimum, defendants R. Murdoch, Carey, DeVoe, J. Murdoch, Klein, Eddington, Shuman, Siskind, L. Murdoch, Barnes, Dinh, Aznar, and Bancroft violated their duty of care in allowing News America to pursue its monopolistic activities in the market for in-store promotion services and FSIs. Decisions made without due care are also not considered a valid exercise of business judgment. Accordingly, demand is excused.

**Demand Is Excused Because a Majority of the Current Board Face a Substantial Likelihood of Liability for Their Misconduct**

67.     Demand is futile as to defendant R. Murdoch because he knowingly, recklessly, or with gross negligence authorized the use of illicit business practices by News Corp's subsidiaries to obtain a monopoly in the in-store promotion and FSI markets. These practices spanned close to a decade, and continue to harm the Company due to pending lawsuits and investigations. Moreover, despite the numerous red flags provided by the Company's nearly $655 million worth of settlements with competitors, News America still has not ceased its monopolistic practices. As the CEO, Chairman, and controlling shareholder of News Corp, defendant R. Murdoch was responsible for managing the business operations of the Company, and apprising himself of the material events of News Corp and its subsidiaries. Defendant R. Murdoch knew of and encouraged News America's illegal anti-competitive activities. Accordingly, defendant R. Murdoch breached his fiduciary duties and faces a substantial likelihood of liability. Demand is futile as to defendant R. Murdoch.

68.     Defendants R. Murdoch, Carey, DeVoe, J. Murdoch, Klein, Eddington, Shuman, Siskind, L. Murdoch, Barnes, Dinh, Aznar, and Bancroft breached their fiduciary duty of loyalty by allowing the Company and its subsidiaries to engage in unlawful business practices, and failing to implement and maintain an adequate system of internal controls to prevent the foregoing illicit practices. The Board's conduct was especially egregious because even when the widespread nature of News America's monopolistic practices was revealed, it failed to take timely corrective measures

to hold those responsible accountable for their actions, and call for an independent investigation into the matter. Moreover, despite the numerous red flags provided by the Company's costly settlements with competitors, defendants R. Murdoch, Carey, DeVoe, J. Murdoch, Klein, Eddington, Shuman, Siskind, L. Murdoch, Barnes, Dinh, Aznar, and Bancroft have not ceased News America's monopolistic practices. As a result, the Company's image and reputation has been devastated, and it faces a myriad of government investigations and lawsuits on behalf of its CPG clients. Accordingly, defendants R. Murdoch, Carey, DeVoe, J. Murdoch, Klein, Eddington, Shuman, Siskind, L. Murdoch, Barnes, Dinh, Aznar, and Bancroft breached their fiduciary duties, and face a substantial likelihood of liability. Demand upon them is futile.

69.     Defendants R. Murdoch, Carey, DeVoe, J. Murdoch, Klein, Eddington, Shuman, Siskind, L. Murdoch, Barnes, Dinh, Aznar, and Bancroft, as members of the Board, were and are subject to the SBC. The SBC went well beyond the basic fiduciary duties required by applicable laws, rules, and regulations. The SBC required that these defendants preserve the Company's "most valuable asset" – its reputation. In particular, the SBC expressly required that these defendants refrain from doing "anything that would harm that reputation, or that would otherwise bring the Company into disrepute." Defendants R. Murdoch, Carey, DeVoe, J. Murdoch, Klein, Eddington, Shuman, Siskind, L. Murdoch, Barnes, Dinh, Aznar, and Bancroft failed to do this which violated the SBC. Because these defendants violated the SBC and failed to maintain the Company's reputation, they face a substantial likelihood of liability for breaching their fiduciary duties, and demand upon them is futile.

70.     As members of the Audit Committee during the time of the wrongdoing, defendants Barnes, Dinh, and Eddington had additional and heightened responsibility to oversee the Company's compliance with legal and regulatory requirements. Moreover, the Audit Committee Defendants

were responsible for implementing and maintaining an adequate system of internal controls to ensure the Company's compliance with applicable rules and regulations. The Audit Committee Defendants breached their fiduciary duties of loyalty and good faith because they knowingly and recklessly failed to ensure such internal controls were in place as demonstrated by the illicit monopolistic practices that occurred under their watch. Thus, defendants Barnes, Dinh, and Eddington face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

**Demand Is Excused Because a Majority of the Current Board Lacks Independence**

71.     Defendant R. Murdoch, as founder, controlling shareholder, CEO, and Chairman, dictates the affairs and operations of News Corp. The Company is only one of forty-four in the Standard & Poor's 500 that divide stock into two classes, only one of which has voting power. As of April 29, 2013, defendant R. Murdoch controlled approximately 38.4% of the voting Class B stock. In comparison, the second largest owner of News Corp voting stock merely owns 7% of the Class B stock, and has no representation on the Board. As such, defendant R. Murdoch has secured a stranglehold on the Company's affairs, and those fiduciaries who are duty-bound to carry out News Corp's business operations.

72.     The Board has continuously and unwaveringly submitted to the wishes of defendant R. Murdoch, and extended him and his family members every privilege at the expense of the Company. For instance, at the behest of defendant R. Murdoch, the Company and its predecessor entities have appointed both his sons to executive and directorial positions with the Company notwithstanding their individual qualifications or the propriety of such placements. In fact, defendant J. Murdoch was brought into "the fold" at News Corp in 1996 when defendant R. Murdoch caused the Company to purchase an 80% stake in defendant J. Murdoch's underperforming

start-up company, Rawkus Entertainment. Similarly, the Company consummated a widely-criticized $674 million deal to acquire Shine Group ("Shine"), a production company founded and majority-owned by defendant R. Murdoch's daughter, Elisabeth Murdoch ("E. Murdoch"), in order to bring her into the fold of the Company. Pursuant to the acquisition of Shine, defendant R. Murdoch promised E. Murdoch a seat on the Board. According to an article by The Wall Street Journal, "A person briefed on News Corp's thinking said senior News Corp managers have long considered an acquisition of Shine an 'inevitable' way to bring Ms. Murdoch to the company." In addition, defendant R. Murdoch caused the Board to employ his wife, Wendi Murdoch, to "provide strategic advice" for the development of MySpace in China before the Company eventually sold the asset. And previously, defendant R. Murdoch had his ex-wife appointed to the Board in 1990 despite the fact that her only prior relevant experience was as a junior news reporter. When the couple divorced nine years later, defendant R. Murdoch, again, flexed his muscle over the other directors, and simply kicked her off the Board. Most recently, the Board approved a pay raise for defendant R. Murdoch in connection with the intended split of the News Corp businesses.[2]

73.     It is well-documented that the Board serves at the whim of defendant R. Murdoch. In an article The New York Times published on July 18, 2011, a member of the Board of GovernanceMetrics International and founder of the Corporate Library, a corporate governance firm, labeled News Corp's Board as *"the ultimate crony board."* The same corporate watchdog group gave the News Corp Board an "F" for governance "in every category," and even proclaimed that the

_____

[2] News Corp is planning to split into two companies. One company will operate as a newspaper and book publisher and will retain the News Corp name. The other will be an entertainment company, called 21st Century Fox. News Corp plans to hold a special meeting of its shareholders on June 11, 2013, and expects the deal to be completed in mid-2013.

Board *isn't just a dysfunctional board. It's a nonfunctional board.*"  As The New York Times recently noted, "*[t]he board of [News Corp] might as well be named 'Friends of Rupert.*'"

74.     Investors have even coined the term, the "Murdoch discount," to value News Corp stock.  The Murdoch discount takes into account defendant R. Murdoch's unfettered penchant for indulging in his personal interests to expand his media empire by entering into dilutive transactions rubberstamped by the Board notwithstanding shareholder value.  News Corp's recent transactions validate the Murdoch discount.  For instance, in 2007, News Corp acquired Dow Jones for $5 billion which represented a staggering 70% premium to Dow Jones' profits.  It was no secret that the widely criticized Dow Jones purchase was primarily consummated to satisfy defendant R. Murdoch's appetite for ownership of The Wall Street Journal, which he sought to use to further his personal political agenda.  Only two years later, the Company was forced to write down $2.8 billion of the value of Dow Jones, comprising nearly half of the acquisition price it paid.

75.     Unsurprisingly, the Board has pledged unwavering support for defendant R. Murdoch and senior management despite the significant damages News America's monopolistic practices have caused the Company to endure.  The Board failed to demand an investigation into or resignation of defendant Carlucci, the main culprit behind News America's illegal business practices, in fear of upsetting defendant R. Murdoch, who shares a close relationship with defendant Carlucci and personally encouraged defendant Carlucci's aggressive management style.  As such, the Board has proven it is incapable of rendering independent judgment and will not act independently because they are beholden to defendant R. Murdoch.

76.     Defendants J. Murdoch and L. Murdoch, as the sons of defendant R. Murdoch, share a close familial relationship with their father that prevents them from exercising any independent or disinterested judgment as to a demand to pursue litigation against him.  Defendant R. Murdoch was

single-handedly responsible for bringing defendants J. Murdoch and L. Murdoch into the family business, and appointing them to major operational positions within News Corp. Indeed, both defendants J. Murdoch and L. Murdoch are beholden to their father for the lucrative compensations they receive from their positions with the Company. Because they owe their entire livelihood to their father, defendants J. Murdoch and L. Murdoch would not dare cross defendant R. Murdoch and risk being ostracized personally and professionally from the good graces of their father. Moreover, as brothers that share both a personal and professional relationship, defendants J. Murdoch and L. Murdoch share a close kinship that prevents each of them from independently evaluating a demand to bring litigation against the other. Accordingly, defendants J. Murdoch and R. Murdoch are hopelessly conflicted and unable to render impartial judgment as to any litigation demand. Demand upon them is futile.

77.     Defendant Carey is neither independent nor disinterested. As defendant R. Murdoch's hand-selected President and COO, defendant Carey receives an annual salary of over $8.3 million, not including his other remunerations which brings his total executive compensation to a whopping $24.7 million. Defendant Carey's relationship with defendant R. Murdoch extends back to 1988 when he first joined the Company, and the multiple roles he served with News Corp, and other entities affiliated with defendant R. Murdoch including Sky Deutschland AG, DirecTV, and BSkyB. Defendant R. Murdoch has, himself, acknowledged that defendant Carey has been "one of [his] closest advisers and friends for years." Because defendant Carey shares a close personal and professional relationship with defendant R. Murdoch, and is beholden to defendant R. Murdoch for his livelihood, defendant Carey cannot impartially evaluate any potential demand to institute litigation against him. Demand is futile as to defendant Carey.

78.     Defendants DeVoe and Siskind are similarly beholden to R. Murdoch due to their positions and principal occupations in entities controlled by defendant R. Murdoch. Defendants DeVoe and Siskind have served on the Board and as executives at News Corp for over twenty years and have been well compensated during their tenure. Since 2007, defendant DeVoe enjoyed a base salary of approximately $2.9 million, and in 2011 alone, defendant DeVoe's total executive compensation was approximately $18.2 million, which included a bonus of $5 million. In 2005 alone, defendant Siskind amassed over $6.7 million in executive compensation, and over $3.7 million in director compensation. Defendants DeVoe and Siskind also both have sons that obtain great pecuniary gain through their relationship with News Corp. Defendant DeVoe's son, David F. DeVoe, Jr., is the Deputy CFO and Executive Vice President of Fox Entertainment Group, Inc., which is a subsidiary of News Corp. Defendant Siskind's son, Kenneth M. Siskind, is a Managing Director of Allen & Company LLC ("Allen & Company"), an investment bank that provided investment advice to the Company during fiscal year 2009. For its services Allen & Company was paid approximately $17.5 million. Accordingly, because of their respective lucrative compensation, extensive relationships with defendant R. Murdoch, and their vested interest in preserving their sons' financially beneficial relationships with New Corp, defendants DeVoe and Siskind cannot exercise independent or disinterested judgment as to any demand to institute litigation against defendant R. Murdoch. Demand upon them is futile.

79.     Defendant Klein is not independent or disinterested. Defendant Klein's compensation exceeds $4.5 million annually. Defendant Klein's compensation and livelihood is inextricably tied to his position with the Company as it represents his principal source of income. He is beholden to defendant R. Murdoch for his continued employment and substantial remunerations, and is hopelessly conflicted and incapable of exercising independent and disinterested judgment as to any

demand to bring litigation against those responsible for his primary source of income. Demand is futile upon defendant Klein.

80.     Defendant Eddington is not independent or disinterested. In addition to the nearly $300,000 in compensation he receives annually for his services as a director of the Board, defendant Eddington is the Non-Executive Chairman of JPMorgan Chase & Co. ("J.P. Morgan") in Australia and New Zealand, and possesses conflicts that arise from J.P. Morgan's significant business dealings with News Corp. For instance, with regard to the Shine transaction, J.P. Morgan served as the financial advisor to Shine, which was majority-owned by defendant R. Murdoch's daughter, E. Murdoch. Further, a J.P. Morgan affiliate acted as the financial adviser to News Corp in its recently withdrawn bid to acquire BSkyB, which would have been the largest acquisition ever for the Company. In February 2011, J.P. Morgan was also retained to serve as the sole book-runner for News America's $2.5 billion debt offering.

81.     Defendant Eddington has also served on the Boards of News Corp's subsidiaries and entities majority owned by the Company. He served as a Director of News Limited, News Corp's principal subsidiary in Australia, from 1998 until 2000. Defendant Eddington was the Chairman of Ansett Holdings Limited and a Director of Ansett Australia Limited and Ansett Australia Holdings Limited from 1997 until 2000. Ansett Australia was an asset of News Corp until 2000, and it was a wholly owned subsidiary of Ansett Holdings Limited, which was equally owned by Air New Zealand and News Corp. As such, because of defendant Eddington's significant director compensation and extensive professional relationship with defendant R. Murdoch, he cannot possibly evaluate independently and in a disinterested manner any potential demand to institute litigation against defendant R. Murdoch. Demand is futile as to defendant Eddington.

82.     Defendant Bancroft has been a director since 2007, and has received nearly $500,000 in compensation for her role on the Board in the last two years.  According to the Company proxies, defendant Bancroft is a professional ballet dancer and an aspiring opera singer.  In conjunction with the sale of the Bancroft family-owned Dow Jones to News Corp in 2007, the Bancroft family sought representation on the Board.  Defendant R. Murdoch hand-picked defendant Bancroft, who was only twenty-seven years old at the time and had no journalism or business experience, to appease the Bancroft family and ensure that the new appointee would not challenge defendant R. Murdoch's control of the Board.   Reportedly, defendant R. Murdoch "simply handed the job to Natalie [Bancroft]" without interviewing any of the other Bancroft family's nominees for the position. Accordingly, because defendant Bancroft is beholden to defendant R. Murdoch for her position on the Board and the compensation received thereof, she cannot impartially evaluate any demand to institute litigation against defendant R. Murdoch.   Further, defendant Bancroft's relative lack of business experience renders it unlikely that she will challenge defendant R. Murdoch's autonomy over the Board and objectively consider a litigation demand.  Therefore, demand is futile upon defendant Bancroft.

83.     Defendant Aznar is a long-time friend of defendant R. Murdoch and they had been friends for several years before defendant R. Murdoch brought defendant Aznar into the Board in 2006.  Indeed, defendant R. Murdoch even attended the wedding of defendant Aznar's daughter in 2002.  Prior to his Board membership, defendant Aznar also provided consulting services for defendant R. Murdoch.  As a Board member, defendant Aznar has received nearly $1.2 billion since 2007 in compensation and stock awards.  As such, defendant Aznar cannot evaluate any demand to bring litigation against defendant R. Murdoch in an independent and disinterested fashion.  Demand is futile upon defendant Aznar.

84.     Defendant Dinh also shares a close and personal relationship with the Murdoch family that extends beyond defendant Dinh's service on the Board.  Defendants Dinh and L. Murdoch have forged a tight-knit friendship since they met in June 2003 at the Aspen Institute conference on journalism and homeland security.  However, defendant Dinh's ties to the Murdoch family extend almost two decades to 1992, when one of defendant R. Murdoch's enterprises, the South China Morning Post, helped defendant Dinh free his sister from a Hong Kong refugee camp. In fact, defendant Dinh has traveled to Australia for defendant L. Murdoch's wedding, and is the godfather of defendant L. Murdoch's child.  As a Board member since 2004, defendant Dinh has received over a billion dollars in compensation.  Because of defendant Dinh's close personal relationship with the Murdoch family, the Murdochs' assistance in freeing defendant Dinh's sister from a refugee camp, and the material compensation defendant Dinh receives as a Company director, he cannot evaluate any demand to bring litigation against defendant R. Murdoch or any of his sons in an independent and disinterested manner. Demand is futile as to defendant Dinh.

85.     Similarly, defendant Dinh shares a personal and professional relationship with defendant Perkins that arises from defendant Dinh's legal representation of defendant Perkins in 2006 in connection with a scandal at the Hewlett-Packard Company ("Hewlett-Packard") involving its illegal-accessing of directors' phone records.  According to media reports, defendants Perkins and Dinh met at a June 2006 dinner welcoming then Spanish President defendant Anzar to the News Corp Board. According to defendant Dinh, "[b]etween drinks and glimpses at a World Cup match…Mr. Perkins asked me for advice on a confidential matter." Defendants Dinh and Perkins also discussed the Hewlett-Packard scandal "later that night and on the plane the next day…. Mr. Perkins asked [Dinh] to serve as his counsel, and [defendant Dinh] agreed."  Their personal and professional relationship serving on News Corp's Board and their attorney-client relationship

prevents them from acting independently of another.  Demand is futile as to defendant Perkins and Dinh.

86.     Non-defendant Chao lacks the independence to vigorously prosecute the wrongdoing alleged herein because she is beholden to defendants Carlucci, DeVoe, Siskind, R. Murdoch, Chernin, and Carey who have supported her husband Senator Mitch McConnell's political career since 2005.  The chart below lists the donations that defendants Carlucci, DeVoe, Siskind, R. Murdoch, Chernin, and Carey contributed to Senator McConnell:

| CONTRIBUTIONS TO DEFENDANT CHAO'S HUSBAND, MITCH MCCONNELL | | | |
|---|---|---|---|
| Contributor | Date | Recipient | Donation |
| Carlucci, Paul V. | 6/15/2005 | Mitch McConnell | $1,000 |
| DeVoe, David | 6/15/2005 | Mitch McConnell | $1,000 |
| Siskind, Arthur | 6/20/2005 | Mitch McConnell | $1,000 |
| Murdoch, Rupert | 6/20/2005 | Mitch McConnell | $2,000 |
| Murdoch, Wendi | 6/30/2005 | Mitch McConnell | $2,000 |
| Chernin, Peter | 8/4/2008 | Mitch McConnell | $1,000 |
| Murdoch, Rupert | 8/4/2008 | Mitch McConnell | $2,300 |
| Murdoch, Wendi | 8/4/2008 | Mitch McConnell | $2,300 |
| Murdoch, Rupert | 11/9/2011 | Mitch McConnell | $1,000 |
| Murdoch, KR | 9/30/2010 | Bluegrass Committee, McConnell's Leadership PAC | $5,000 |
| Murdoch, KR | 12/12/2011 | Bluegrass Committee, McConnell's Leadership PAC | $2,000 |
| Carey, Charles | 12/12/2011 | Bluegrass Committee, McConnell's Leadership PAC | $2,000 |
| | | TOTAL | $22,600 |

87.     Confirming these concerns regarding defendants R. Murdoch, J. Murdoch, L. Murdoch, Carey, DeVoe, and Klein's ability to vigorously prosecute the claims alleged herein, News Corp has disclosed in its U.S. Securities and Exchange Commission ("SEC") filings that defendants R. Murdoch, J. Murdoch, L. Murdoch, Carey, DeVoe, and Klein are not considered independent directors under the listing standards of the NASDAQ Global Market and rules promulgated by the SEC.

88.     News Corp has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein.  Despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the Individual Defendants and the current Board have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct to attempt to recover for News Corp any part of the damages News Corp suffered and will suffer thereby.  The Board's stubborn failure to investigate, correct, and commence legal action against those responsible for the misconduct alleged herein in the face of heavy media and investor scrutiny on the matter, demonstrates that the Board is hopelessly incapable of independently addressing any legitimate demand.

89.     Plaintiff has not made any demand on the other shareholders of News Corp to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     News Corp is a publicly held company with over 2.3 billion shares outstanding as of May 6, 2013, and thousands of shareholders;

(b)     making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders; and

(c)     making demand on all shareholders would force plaintiff to incur excessive expenses, assuming all shareholders could be individually identified.

## COUNT I

### For Breach of Fiduciary Duty Against the Individual Defendants

90.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

91.     The Individual Defendants owed and owe News Corp fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe News Corp the highest obligation of good faith, fair dealing, loyalty, and due care.

92.     The Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.  More specifically, the Individual Defendants violated their duty of good faith by creating a culture of lawlessness within News Corp, and/or consciously failing to prevent the Company from engaging in the unlawful acts complained of herein.

93.     The Officer Defendants breached their duty of loyalty by knowingly, recklessly, or with gross negligence causing and/or allowing the Company and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs.  Moreover, defendants R. Murdoch, Carlucci, Carey, DeVoe, J. Murdoch, Klein, L. Murdoch, Siskind, and Chernin failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations.

94.     The Director Defendants breached their duty of loyalty by knowingly or recklessly allowing the Company and its subsidiaries to engage in illicit business practices which included monopolistic activities in the market for in-store promotion services and FSIs.  Moreover, defendants R. Murdoch, Carlucci, Carey, DeVoe,  J. Murdoch, Klein, Eddington, Barnes, Dinh, L. Murdoch, Aznar, Bancroft, Chernin, Cowley, Shuman, Knight, Siskind, and Perkins failed to implement and maintain adequate internal controls to detect or prevent the foregoing monopolistic practices and ensure compliance with applicable rules and regulations.

95.     The Audit Committee Defendants, Barnes, Dinh, Eddington, Knight, and Perkins, breached their fiduciary duty of loyalty by knowingly or recklessly overseeing and allowing the

Company's monopolistic practices and implementation of a business model that put the Company at risk violating antitrust laws.  This constituted a violation of the duties of the members of the Audit Committee under its Charter.

96.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

97.     Plaintiff on behalf of News Corp, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

98.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

99.     As a result of the misconduct described above, the Individual Defendants have wasted corporate assets by forcing the Company to expend valuable resources in defending itself in the numerous legal proceedings and investigations commenced, and to be commenced, against the Company.  The Company has already paid out nearly $655 million to settle lawsuits filed by competitor companies damaged by News America's illegal business practices.  Further, the Company will incur additional damages from defending News America in the lawsuits brought on behalf of Dial and Heinz, and the Company's various other CPG clients, and potentially billions of dollars in settlements or to satisfy adverse judgments.  In addition, due to the Individual Defendants' mismanagement, the Company has been forced to interrupt its business and dedicate its resources and attention to remediating the lack of internal controls that allowed the Company's subsidiaries to engage in the illegal business practices discussed herein.  Finally, by failing to conduct proper supervision, the Individual Defendants have caused News Corp to waste its assets by paying

improper compensation to certain of its executive officers and directors that breached their fiduciary duty.

100.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

101.    Plaintiff, on behalf of News Corp, has no adequate remedy at law.

## COUNT III

### Against All Individual Defendants for Unjust Enrichment

102.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

103.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of News Corp.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to News Corp.

104.    Plaintiff, as a shareholder and representative of News Corp, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

105.    Plaintiff, on behalf of News Corp, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands for a judgment as follows:

A.      Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.     Directing News Corp to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect News Corp and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

1.     a proposal to strengthen the Company's internal controls as to its compliance with applicable antitrust laws and regulations;

2.     a proposal to strengthen News Corp's corporate governance to ensure independence of the Board from management by separating the role of Chairman of the Board from the CEO position;

3.     a proposal to strengthen the Board's supervision of the Company's subsidiary businesses and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

4.     a provision to permit the shareholders of News Corp to nominate at least three candidates for election to the Board;

C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting defendants' assets so as to assure that plaintiff on behalf of News Corp has an effective remedy;

D.     Awarding to News Corp restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.     Awarding to plaintiff reasonable attorneys' fees, consultant and expert fees, costs and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: June 6, 2013

LAW OFFICES OF THOMAS G. AMON

THOMAS G. AMON (TGA-1515)

250 West 57th Street, Suite 1316
New York, NY 10107
Telephone: (212) 810-2430
Facsimile: (212) 810-2427
tamon@amonlaw.com

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
FELIPE J. ARROYO
JULIA M. WILLIAMS
GINA STASSI
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
farroyo@robbinsarroyo.com
jwilliams@robbinsarroyo.com
gstassi@robbinsarroyo.com

ROBEIN, URANN, SPENCER, PICARD
  & CANGEMI APLC
MARIA CANGEMI
CHRISTINA CARROLL
2540 Severn Avenue, Suite 400
Metairie, LA  70002
Telephone: (504) 885-9994
Facsimile: (504) 885-9969
mcangemi@ruspclaw.com
ccarroll@ruspclaw.com

THE WARNER LAW FIRM
PAUL T. WARNER
11123 McCracken Lane, Suite A
Cypress, TX 77429
Telephone: (281) 664-7777
Facsimile: (281) 664-7774
pwarner@warner-law.net

**Attorneys for Plaintiff**

864448

## VERIFICATION

I, _____, hereby declare as follows:

I am a Trustee for the Iron Workers Mid-South Pension Fund, plaintiff in the within entitled action. I have read the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: 6/5/13 _____

_____
TRUSTEE